Mr. Tom Dalton, Director Arkansas Department of Human Services 329 Donaghey Building, P.O. Box 1437 Little Rock, Arkansas 72203-1437
Dear Mr. Dalton:
This is in response to your request for an opinion, on behalf of the Child Care Facility Review Board, regarding Act 1293 of 1993, which is codified at A.C.A. §§ 20-78-601 to 604 (Supp. 1993). Pursuant to A.C.A. §§ 20-78-601(a), the name of each applicant for a license to own or operate a child care facility and the name of each person seeking employment in a licensed child care facility are required to be checked with the Arkansas Child Abuse Central Registry for reports of child abuse and neglect or maltreatment. Pursuant to A.C.A. § 20-78-602(a)(1), each applicant for a license to own or operate a child care facility is required to apply to the Arkansas State Police for a nationwide criminal records check, to be conducted by the FBI. Additionally, under A.C.A. § 20-78-602(b)(1), any person seeking employment, if that employment involves supervisory or disciplinary power over, or routine contact with, a child or children in any child care facility which is required to be licensed by the Child Care Facility Review Board, is required to apply to the Arkansas State Police for a nationwide criminal records check, to be conducted by the FBI. With regard to these requirements, you have posed the following four questions:
 1. What individuals are required to submit to Arkansas Child Abuse Central Registry and criminal records checks pursuant to Sections 1(a) and 2(a) of Act 1293 of 1993, which are codified at A.C.A. §§ 20-78-601(a) and 20-78-602(a)(1), when these sections require such checks of "each applicant for a license to own or operate a child care facility"? Specifically, when an applicant for a license to own or operate a child care facility is someone other than an individual, such as a corporation, school, or church, of whom do you require the Central Registry and criminal records checks?
 2. Pursuant to Act 1293 of 1993, are owners and operators of child care facilities required to submit to Arkansas Child Abuse Central Registry and criminal records checks every two years when they apply for renewal of their licenses, or may the background checks be valid for a longer period of time?
 3. What individuals are required to submit to criminal records checks when Sections 1(a) and 3(a) of Act 1293 of 1993, as they are codified at A.C.A. §§ 20-78-601(a) and 20-78-602(b)(1), refer to persons" seeking employment"? Specifically, are these checks required for all applicants for employment, regardless of whether they are awarded the job? Also, does the act, when it refers to persons "seeking employment," refer to only paid staff members or does it refer to other individuals, such as volunteers, student interns, and bus and van drivers, teachers, nurses, therapists and various public school staff who have supervisory or disciplinary power over, or routine contact with, a child or children?
 4. Are current employees of child care facilities required to submit to Arkansas Child Abuse Central Registry and criminal records checks when Sections 1(a) and 3(a) of Act 1293 of 1993, which are codified at A.C.A. §§ 20-78-601(a) and 20-78-602(b)(1), refer to any person "seeking employment" in a licensed child care facility?
As an initial matter, it should be noted that Act 1293 of 1993 presents several problems with regard to statutory interpretation. I have addressed your questions as best I can, but should note that the Child Care Facility Review Board has the authority to adopt regulations which will comport with the requirements of the act. A.C.A. § 20-78-206 (Repl. 1991). It appears it will be necessary for the Child Care Facility Review Board to exercise its discretion in adopting procedures and guidelines which will be consistent with the purpose and requirements of Act 1293 of 1993 when the act either does not address an issue or where the intent of the act is unclear.
With regard to your first question, the provision codified at A.C.A. § 20-78-210(a) (Supp. 1993) provides that any person, partnership, group, corporation, organization, or association which desires to operate a child care facility is required to make an application for a license to the Child Care Facility Review Board. Such applicants, pursuant to A.C.A. §§ 20-78-601(a) and 20-78-602(a)(1), are required to have their names submitted for Central Registry and criminal records checks. As you indicate in your correspondence, when an individual is the applicant for a license to own or operate a child care facility, it is easily determined that the name of that individual is the one required to be submitted for the criminal background checks. However, as you note in your letter, a question arises regarding what name should be used in the criminal background checks when a corporation, school, or church is the applicant for a child care facility license.
In construing statutory language, such as the language in A.C.A. §§ 20-78-601(a) and 20-78-602(a)(1), the rule of the Arkansas Supreme Court is to "construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language." Brimer v. Arkansas Contractors Licensing Bd.,312 Ark. 401, 405, 849 S.W.2d 948 (1993). In applying this rule to the requirement that "each applicant for a license to own or operate a child care facility" submit to a Central Registry and criminal records check, it would seem, at first glance, that when a corporation, school, or church is the applicant for a child care facility license, the name of the corporation, school, or church is the one required to be submitted for the checks. As a practical matter, however, this would not comport with the apparent intent of the legislature in passing Act 1293. While a corporation, technically, can commit an offense (See A.C.A. §5-2-502 (1987)), it is my opinion that the names of corporations, churches, and schools are unlikely to appear in either the Arkansas Child Abuse Central Registry or in the nationwide criminal records data files maintained by the FBI. Additionally, the nationwide criminal records checks, which are required of applicants for a license to own or operate a child care facility pursuant to A.C.A. § 20-78-602(a)(1), are required to include the taking of fingerprints, which obviously would be an impossibility when the applicant is an entity such as a corporation, school, or church.
Thus, to read Sections 1(a) and 2(a) of Act 1293 of 1993, which are codified at A.C.A. §§ 20-78-601(a) and 20-78-602(a)(1), as requiring the names of corporations, schools, and churches to be submitted for criminal records checks when these entities are the "applicants" for a child care facility license would seem impractical. In this regard, it has been stated that a literal application of a statute which would lead to absurd consequences should be rejected where an alternative interpretation affects the statute's purpose. Stover v. Stover, 287 Ark. 116,696 S.W.2d 750 (1985). In light of this precept, it is my opinion that the Child Care Facility Review Board, which is empowered to develop regulations implementing the act, should adopt a policy with regard to applicants who are entities such as corporations, schools, and churches, that will comport with the purpose of Act 1293 of 1993, addressing specifically which individuals involved in the application process, if any, are required to submit to criminal records checks.
In your correspondence, you note a concern that when entities such as corporations are the applicants for child care facility licenses, the persons who will be in actual contact with the children of a facility are not the persons who are being submitted to background checks. With regard to this concern, it should be noted that persons seeking employment in a licensed child care facility will be required to be the subjects of FBI nationwide criminal records checks if the employment they seek involves supervisory or disciplinary power over, or routine contact with, a child or children. See Section 3(a) of Act 1293 of 1993, which is codified at A.C.A. § 20-78-602(b)(1). Additionally, all persons seeking employment in a licensed child care facility, regardless of the nature of that employment, are required to submit their names for checks with the Arkansas Child Abuse Central Registry. See Section 1(a) of Act 1293 of 1993, which is codified at A.C.A. § 20-78-601(a).
In response to your second question, it is my opinion that owners and operators of child care facilities will be required to submit to Central Registry and criminal records checks every two years when they apply for renewal of their licenses. The provision codified at A.C.A. § 20-78-210(c) (Supp. 1993) states that a child care facility license shall continue in effect for two years or until revoked or suspended. Additionally, the provisions codified at A.C.A. §§ 20-78-601(a) and 20-78-602(a)(1) require Central Registry and criminal records checks of each "applicant" for a license to own or operate a child care facility. Since renewal of a child care facility license is not automatically granted, owners or operators of a facility will, technically, be considered "applicants" when they make an application for renewal of their licenses. The term "application" has been defined to mean "a putting to, placing before, preferring a request or petition to or before a person; the act of making a request for something." Sparacino v. Ferona, 9 Ill. App. 2d 422,133 N.E.2d 753 (1956). See also Black's Law Dictionary 90 (5th ed. 1979). Thus, persons applying for renewal of their licenses fall within the plain language of the statute. As a result, it is my opinion that Act 1293 does not provide the Child Care Facility Review Board with the authority to establish a period of time exceeding two years for which the Central Registry and criminal records checks will be valid.
In response to your third question, it is my opinion that the statutory language in A.C.A. §§ 20-78-601(a) and 20-78-602(b)(1) may be interpreted to require criminal background checks only of applicants who have been extended a conditional offer of employment subject to the results of the background checks. To interpret the language "seeking employment" to apply to every applicant at the beginning of the application process as a prerequisite for applying for employment may reflect a more literal interpretation of statutory wording but would create needless, substantial expense to thousands of applicants who will not be hired regardless of the outcome of the background checks and a needless waste of the extensive resources required to perform such checks. The rule in Stover, discussed above, is equally applicable here. The Child Care Facility Review Board should, of course, if they concur in this interpretation, promulgate a rule to effectuate it.
With regard to that portion of your third question which pertains to volunteers and other unpaid staff members currently working in child care facilities, it should be noted that the criminal background checks referred to in Act 1293 will not be required of these persons, regardless of whether they are considered employees. This conclusion is based on the determination, which is reached below in response to your fourth question, that the act does not appear to apply to current employees. An issue arises, however, with regard to those persons who are not currently employed in a child care facility and who apply to work as volunteers. The provision codified at A.C.A. §§ 20-78-601(a) requires that the name of each person "seeking employment" in a licensed child care facility be checked with the Arkansas Child Abuse Central Registry for reports of child abuse/neglect or maltreatment. Additionally, the provision codified at A.C.A. § 20-78-602(b)(1) requires an FBI nationwide criminal records check for any person "seeking employment," if that employment involves supervisory or disciplinary power over, or routine contact with, a child or children in a child care facility which is required to be licensed by the Child Care Facility Review Board. With regard to these statutes, the issue is whether volunteer or unpaid work is considered "employment."
In determining whether an "employment" relationship exists, the Arkansas Supreme Court has stated the following: "In determining employment, we look to various factors with the degree of control being the most universally accepted standard for establishing an employer-employee relationship." Cash v. Carter, 312 Ark. 41,44, 847 S.W.2d 18 (1993). See also Haavistola v. CommunityFire Co. of Rising Sun, Inc., 1993 WL 388330 (4th Cir. 1993) (stating that the common law standard traditionally used in deciding whether an individual can claim employee status emphasizes the importance of an employer's control over the individual.); Craddock Moving Storage Co. v. Settles,427 S.E.2d 428 (Va.Ct.App. 1993) (stating one is an "employee" of another if the person for whom he or she works has the power to direct the means and methods by which the work is done.) It has also been stated that "[e]mployment is commonly used and understood to refer to one's work." Kaczmarek v. Provident Lifeand Accident Ins. Co., 747 F.Supp. 516, 517 (E.D. Ark. 1990).See also Webster's New World Dictionary 1638 (2d ed. 1974) (defining "work" as "physical or mental effort exerted to do or make something; purposeful activity.") Thus, it appears that if individuals are not paid wages for their work, it does not necessarily mean that they are not considered to be "employed." Rather, the test for determining whether an employment relationship exists will be whether the employer has effective control over an individual's work.
In your correspondence, you indicate that there are volunteers and other unpaid staff members working in child care facilities who have routine contact with children and who perform some of the same duties as paid employees of the facilities. You also note that some of the unpaid staff members are counted in the staff/child ratios for licensing purposes. As stated previously, it is my opinion that current volunteers and unpaid staff members are not encompassed within the scope of Act 1293 of 1993. However, in light of the foregoing discussion on the term "employment," it is my opinion that Central Registry checks, pursuant to A.C.A. § 20-78-601(a), can be required for those persons who apply to work as volunteers at child care facilities if the volunteer work sought will be subject to the control of the child care facility. With regard to the FBI nationwide criminal records checks referred to in A.C.A. § 20-78-602(b)(1), it is my opinion that, if the volunteer work sought involves supervisory or disciplinary power over, or routine contact with, the children of a child care facility and if the volunteer work sought is subject to the control of the supervisors of a facility, the applicants for such volunteer or unpaid work can be required to submit to the checks referred to in A.C.A. § 20-78-602(b)(1). Thus, when adopting regulations in order to comply with the requirements of Act 1293, the Child Care Facility Review Board could establish guidelines, consistent with the principles set forth above, with regard to which volunteers and other unpaid staff members will be required to submit to the criminal background checks referred to in the act.
In response to your fourth question, it is my opinion that Act 1293 of 1993 does not require current employees of child care facilities to submit to either Central Registry or criminal records checks. Sections 1(a) and 3(a) of Act 1293 of 1993, which are codified at A.C.A. §§ 20-78-601(a) and 20-78-602(b)(1), respectively, require such checks for persons who are "seeking employment" in licensed child care facilities. In interpreting statutory language, such as the phrase "seeking employment," the rule of the Arkansas Supreme Court, as stated previously, is "to construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language."Brimer v. Arkansas Contractors Licensing Bd., 312 Ark. 401,405, 849 S.W.2d 948 (1993). In this regard, "seek" has been defined as "to bend one's efforts toward; aim at; pursue."Webster's New World Dictionary 1289 (2d ed. 1974). It is clear that individuals who are currently employed at a child care facility cannot be characterized as persons who are "seeking employment" at that facility. Thus, the criminal background checks referred to in Act 1293 are not required of current employees of child care facilities.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh